IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>VERONICA L. UNTALAN,<br><br>                Defendant. | CRIMINAL CASE NO. 19-00023-002<br><br>**REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |

Pending before the court are a petition and supporting declaration (together, the "Violation Petition") filed on September 28, 2021, the Supplemental Declaration filed on November 23, 2021, the Second Supplemental Declaration filed on January 5, 2022, the Third Supplemental Declaration filed on January 18, 2022, the Fourth Supplemental Declaration filed on January 19, 2022, and the Fifth Supplemental Declaration filed on January 21, 2022, *see* ECF Nos. 139, 150, 162, 166, 167 and 169, the Defendant violated her supervised release conditions as follows:

1. Tested positive for the use of methamphetamine on August 12, 2021; tested positive for the use of methamphetamine between December 9-20, 2021, December 20-27, 2021, between December 27, 2021, to January 3, 2022, and January 3-10, 2022 (four sweat patches total with confirmed lab results);

2. Failed to report for drug testing 12 times (September 26 and 29, 2021, October 27-28 and 30- 31, 2021, and November 6, 8, 10, 13, 15 and 18, 2021);

3. Failed to attend drug treatment session on September 27, 2021; and

4. Admitted to the use of "meth" on November 28, 2021.

At the last hearing held on January 20, 2022, defense counsel stated that the Defendant would admit to all the above violations but would deny all allegations of drug use based on the positive

sweat patches. *See* Minutes, ECF No. 168.

On January 27, 2022, the Defendant appeared in court and admitted to all remaining violations pending against her. *See* Minutes, ECF No. 172. The parties presented their joint recommendation on an appropriate sanction for the violations. *Id.* Having heard argument from the parties, the court now issues this Report and Recommendation as to an appropriate disposition for the supervised release violations.

## BACKGROUND

### A. Conviction and Sentence

On July 8, 2020, the Chief Judge sentenced the Defendant to time served (about 33 days) and three years of supervised release for the offense of distribution of Less than One Gram of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. §2. *See* J., ECF No. 93. Among other conditions of supervised release imposed, the Defendant was ordered to not unlawfully possess a controlled substance, refrain from any unlawful use of controlled substances, and submit to drug testing. *Id.* at 3 and 5.

### B. Post-Conviction Conduct

On April 20, 2021, the Chief Judge modified the Defendant's supervised released conditions to require that she write a two-page paper about the short and long-term consequence of methamphetamine use as a sanction for admitting to the use of methamphetamine twice (September 12, 2020, and February 22, 2021) and for missing two drug tests (September 14 and 15, 2020). *See* Order, ECF No. 127.

On August 26, 2021, an informational report was filed alleging that the Defendant tested positive for the use of methamphetamine on July 14, 2021, and submitted a diluted urine sample on July 15, 2021. *See* ECF No. 133. At the request of the probation officer, the court agreed to take no punitive action against the Defendant. *See* Order, ECF No. 134.

## CURRENT VIOLATIONS

### A. Filing of Violation Petition

On September 28, 2021, the probation officer filed the instant Violation Petition asserting that the Defendant tested positive for methamphetamine use when she reported for drug testing on

August 12, 2021. *See* Violation Petition, ECF No. 139. The Defendant denied using illicit substances, so the urine specimen was sent for analysis. A lab report later confirmed the sample was positive for methamphetamine. The probation officer met with the Defendant on September 13, 2021, to discuss the lab confirmation, but the Defendant maintained that she did not use any illicit substance.

At the probation officer's request, the court issued a summons for the Defendant to appear on October 7, 2021, to answer to the alleged violation.[1] *See* Order, ECF No. 141.

**B.     Filing of Supplemental Declaration**

On November 23, 2021, the probation officer filed a Supplemental Declaration, *see* ECF No. 150, alleging the following additional violations:

| DATE | ACTION |
| --- | --- |
| September 26, 2021 | Defendant failed to report for scheduled drug tests at the Lighthouse Recovery Center ("LRC"). |
| September 29, 2021 | On September 30, 2021, the probation officer spoke with the Defendant, who stated that she was not feeling well. The probation officer requested the Defendant provide medical verification, but the Defendant did not submit any documents. |
| September 27, 2021 | Defendant failed to attend her scheduled substance abuse treatment session at LRC. |
| October 27, 2021<br>October 28, 2021<br>October 30, 2021<br>October 31, 2021<br>November 6, 2021<br>November 8, 2021<br>November 10, 2021<br>November 13, 2021<br>November 15, 2021<br>November 18, 2021 | Defendant failed to report to LRC for drug tests. She also did not call or report to the probation office the day following each missed drug test to discuss her noncompliance. |

**C.     Subsequent Court Hearings**

On November 29, 2021, the Defendant appeared before the court using crutches. *See* Minutes, ECF No. 151. The court appointed the Federal Public Defender to represent the Defendant.

---

[1] The October 7th hearing was continued to October 26, 2021, at the Defendant's request because of her potential exposure to COVID-19 and quarantine. *See* ECF Nos. 143-44. The court then granted the Defendant's request to continue the October 26th hearing again because of her "continued illness from COVID-19." *See* ECF Nos. 145-46.

*Id.* and Appointment Order, ECF No. 152. Ms. Kottke asked for a two week continuance, stating that the Defendant still had lingering effects from the COVID-19 virus that exacerbated her pre-existing conditions. Ms. Kottke also noted that the Defendant had an appointment scheduled with an orthopedic surgeon at Guam Regional Medical City ("GRMC") that afternoon and asked that the Defendant be allowed to remain on release so that she could go to her appointment. Ms. Kottke asked that the Defendant be switched to wearing a sweat patch because the Defendant had difficulty sitting and it would be difficult for her to provide a urine sample.

The probation officer requested that the Defendant be detained because she failed to show for 12 drug tests and faced mandatory revocation. The probation officer stated that he made numerous attempts to contact the Defendant and left numerous messages. The probation officer said his last contact with the Defendant was on October 18, 2021.

Counsel for the government acknowledged the probation officer's concerns but noted that defense counsel presented compelling reasons why the Defendant should remain on release.

The court expressed its concerns about the Defendant's medical needs and being able to meet them if she was detained. The court ordered the Defendant to sign a medical release form to allow the probation officer to access her medical records and further ordered that a sweat patch be applied on the Defendant immediately after the hearing. The matter was then continued to December 9, 2021.

On December 9, 2021, the parties again appeared before the court. *See* Minutes, ECF No. 159. Ms. Kottke stated that the Defendant was seen by a specialist at GRMC but could not be fit into the surgery schedule until February, so the Defendant has an appointment to see another specialist at Guam Memorial Hospital. Ms. Kottke asked that the Defendant continue to remain on release to address her medical issues. The probation officer stated that a sweat patch was applied on the Defendant after the hearing on November 29, 2021, and was removed recently, with results still pending. The court agreed to allow the Defendant to remain on release pending the next hearing and ordered the probation officer to continue monitoring the Defendant's compliance by sweat patches. The matter was then continued to January 20, 2022.

///

### D. Filing of Second Supplemental Declaration

On January 5, 2022, the probation officer filed a Second Supplemental Declaration, *see* ECF No. 162, alleging further violations of the Defendant's supervised release conditions. According to the probation officer, the results for sweat patch applied on November 29, 2021, and removed on December 6, 2021, came back positive for methamphetamine after lab analysis. During a meeting with the probation officer on December 20, 2021, the Defendant admitted she used "meth" on November 28, 2021. Another sweat patch was applied on December 9, 2021, and removed on December 20, 2021. The lab report received on December 30, 2021, confirmed a positive result for methamphetamine, but the Defendant denied she used any illicit substances during the time period she wore the second sweat patch.

### E. Filing of Third Supplemental Declaration

On January 18, 2021, the probation officer filed a Third Supplemental Declaration, *see* ECF No. 166, asserting that a sweat patch was applied on the Defendant on December 20, 2021, and removed on December 27, 2021, and then sent to the lab for analysis. A lab report thereafter received on January 10, 2022, confirmed a positive result for methamphetamine and THC. The probation officer met with the Defendant on January 14, 2022, and she insisted that she did not use any illicit substance.

### F. Filing of Fourth Supplemental Declaration

On January 19, 2021, the probation officer filed a Fourth Supplemental Declaration, *see* ECF No. 167, asserting that a new sweat patch was applied on the Defendant on December 27, 2021, and removed on January 3, 2022. The lab analyzed the sweat patch and reported that it was positive for methamphetamine.

### G. Further Court Hearing, Partial Admissions and Detention

On January 20, 2022, the parties appeared before the court, *see* Minutes, ECF No. 168, and Ms. Kottke stated that the Defendant would admit all allegations in the original Petition and Supplemental Declaration, including the allegation in the Second Supplemental Declaration as to the Defendant's admission of meth use on November 28, 2021. Ms. Kottke further stated that the Defendant would deny all allegations in the Second, Third and Fourth Supplemental Declarations

that deal with the Defendant's supposed drug use based on positive sweat patches. Ms. Kottke stated that she would like to review the lab reports and then determine whether an evidentiary hearing was necessary because the medication the Defendant is taking may result in a false positive on the sweat patch. Ms. Kottke also asked that the Defendant be permitted to remain on release since she needed further medical treatment. The probation officer asked that the Defendant be detained based on the recent violations. He also verified that the Defendant received a steroid injection last week and noted that she continues to test positive. The government agreed with the recommendation for detention, noting that the Defendant was a danger to herself and the public. Ms. Kottke asked that the Defendant's counseling sessions be increased to curb any alleged danger to the community. The court ordered the Defendant detained pending the next hearing.

**H.    Filing of Fifth Supplemental Declaration**

On January 21, 2022, the probation officer filed a Fifth Supplemental Declaration alleging that the sweat patch applied on the Defendant on January 3, 2022, and removed on January 10, 2022, was analyzed by the lab and confirmed to be positive for methamphetamine. *See* ECF No. 169.

**I.    Further Admissions**

On January 27, 2022, the parties again appeared before the court, *see* Minutes, ECF No. 172, and Ms. Kottke stated that an evidentiary hearing was not necessary with regard to the remaining allegations involving positive sweat patches. The Defendant then entered admissions to the remaining violations, including the new allegation in the Fifth Supplemental Declaration. Counsel presented their joint recommendation on an appropriate sanction for the violations. Having reviewed the record herein and considered the parties' joint recommended sanction, the court now issues this Report and Recommendation.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence

supports" revocation). Revocation is mandatory if a defendant fails to comply with drug testing or tests positive for than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(3) and (4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Fifth Amended Violation Worksheet, the allegations are Grade C violations, which carry the potential for 3-9 months of imprisonment under the sentencing guidelines based on the Defendant's criminal history category of I, followed by 27-33 months of supervised release. *See* Fifth Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 169-1.

Defense counsel stated that the Defendant has had numerous medical issues recently. Ms. Kottke stated that the Defendant continues to have issues with her feet and is not getting the treatment she needs. Counsel asked that the Defendant be sentenced to a split sentence of time served and location monitoring, which will allow her to obtain necessary treatment.

The probation officer recommended a sentence of three months, the low end of the guideline range. He stated that an assessment of the home was necessary before the court could impose location monitoring.

Counsel for the United States concurred that a low-end sentence was reasonable with the possibility of serving a portion of the sentence on home confinement with location monitoring if the home is deemed suitable. Ms. San Nicolas asserted that the Defendant's recent violations appear to be more serious that her original offense. Ms. San Nicolas stated that a split sentence was reasonable to allow the Defendant to get treatment.

On February 10, 2022, the court granted the Defendant's motion for release on location monitoring. *See* Order, ECF No. 174. The Defendant was ordered to be released beginning February 11, 2022, and placed on home detention with location monitoring. *Id.*

This is the Defendant's first revocation proceeding, which warrants some leniency. The parties' recommended sentence of a three month split sentence is reasonable, and will allow the Defendant to get needed medical treatment and also participate in substance abuse treatment and counseling. The recommended sentence is sufficient, but not greater than necessary, provides just punishment and affords adequate deterrence.

///

# RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge (1) accept the Defendant's admissions to violations, (2) revoke the Defendant's supervised release term, and (3) sentence her to serve a three-month split sentence of time served, with the remainder on home detention with location monitoring, followed by 35 months of supervised release.

A disposition hearing shall be held on Thursday, April 21, 2022, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Mar 28, 2022

## NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**